UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| LARRY & JOAN HUTCHINGS, ) | Case No. 04-42306-293 |
| ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| DENNIS & TINA CROCKER, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| -v- ) | Adv. No. 04-4145-293 |
| ) | |
| LARRY & JOAN HUTCHINGS, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Dennis and Tina Crocker (collectively the "Crockers") filed this adversary proceeding against Defendants-Debtors (collectively the "Debtors"). The Crockers maintain that Debtors incurred a $127,129.95 obligation to them by fraud so that the obligation is excepted from Debtors' discharge under 11 U.S.C. §523(a)(2)(A). The Court finds for the following reasons that the Crockers failed to establish by a preponderance of the evidence that the debt in question is excepted from discharge

under §523(a)(2)(A).

Debtors were contractors, specializing in residential construction. Debtors and the Crockers entered into an agreement dated August 15, 2002, whereby Debtors agreed to build the Crockers' residence in exchange for $537,626.00 (the "Agreement"). The $537,626.00 contract price did not include "extras", which were defined as upgrades ordered by Plaintiffs that were not included in the Agreement.

Plaintiffs made three payments to Debtors totaling $484,420.75. The Crockers made their first payment on August 21, 2002; the second payment on January 15, 2003; and the third payment on April 25, 2003. Throughout the project, Debtors paid the various subcontractors from the proceeds of these payments and then presented lien waiver to Plaintiffs.

The Crockers, however, ordered many extras, particularly in the basement area. These extras significantly drove up the cost of construction, which in turn increased Debtors' obligation to their various subcontractors on the project.

The Crockers and Debtor Larry Hutchings met on October 27, 2003, to discuss the Crockers' payment of the extras. Larry Hutchings explained that because of the increased cost of completing the extras in the basement, the $484,420.75 that the Crockers had paid was not sufficient to pay all of the various subcontractors. Larry Hutchings gave the Crockers a detailed accounting that reflected what each

2

subcontractor was owed, which totaled $53,785.33. Larry Hutchings also gave the Crockers a detailed report of what work had been completed and what work needed to be done.

The Crockers did not make another payment to Debtors after the October meeting despite their contractual obligation in the Agreement to pay for the extras. Debtors continued to work on the project until they ran out of cash and stopped working on the project on December 15, 2003. At the time they ceased working, Debtors had completed the residence except for some exterior concrete work, installing the plumbing fixtures, painting and finishing the deck. Debtors presented evidence at trial that their work was of high quality.

The Crockers brought this instant action seeking a determination by the Court that some $127,129.00 that they claim Debtors owe them is excepted from discharge under 11 U.S.C. §523(a)(2)(A). This amount stems from Debtors' alleged misrepresentations that they paid subcontractors when in fact they had not. Some of the unpaid subcontractors filed mechanics liens, which totaled $67,129.95, which the Crockers eventually satisfied. The Court finds that the Crockers have failed to establish by a preponderance of the evidence that this alleged debt was excepted from discharge under §523(a)(2)(A) for the following reasons.

Section 523(a)(2)(A) of the Code provides that a debt for money is excepted

3

from discharge to the extent that the debt was obtained by "false pretenses, a false representation, or actual fraud...". Section 523(a)(2)(A) incorporates the common elements of fraud so that the creditor must establish by a preponderance of evidence that: (1) the debtor made a false representation; (2) at the time the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the misrepresentation; and (5) the misrepresentation proximately caused the creditor's loss. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). Here the Crockers failed to make the threshold showing that Debtors made any misrepresentation to them.

The entire basis for the Crockers' claim is that Debtors misrepresented to them that Debtors had paid the subcontractors when in fact the Debtors had not. Mr. Crocker testified at trial that Debtors affirmatively represented to him that they had paid all of the subcontractors. Additionally, Mr. Crocker testified that Larry Hutchings failed to tell him at the October 2003 meeting that some of the subcontractors had not been paid.

Larry Hutchings testified that he only provided lien waivers to the Crockers upon paying the subcontractors and that he never misrepresented to the Crockers that he had paid subcontractors that remained unpaid. Further, Larry Hutchings stated at

4

trial that he affirmatively notified the Crockers at the October 2003 meeting that because of the Crockers' failure to pay for the extras, several subcontractors remained unpaid.

The Court had an opportunity to view the live testimony of the witnesses and their demeanor and finds that Larry Hutchings' testimony was credible. The Court specifically finds that Larry Hutchings did tell the Crockers at the October 2003 meeting that several subcontractors remained unpaid because of the Crockers' failure to pay for the extras. The Court additionally notes that Larry Hutchings had documentary evidence that corroborated his testimony that he provided the services and material for which he provided lien waivers. The Court concludes, therefore, that Debtors did not make any misrepresentations to the Crockers.

Also, even assuming *arguendo* that Debtors did misrepresent that they had paid the subcontractors when they had not, the Court fails to see how the Crockers relied on that purported misrepresentation or how it proximately caused any damage. The Crockers did not make any additional payment to Debtors after the October 2003 meeting. Also, the gravamen of the Crocker's complaint is that Debtors misrepresented that they had paid the subcontractors. The Crockers contend, therefore, that the subcontractors placed mechanics liens on the residence, which they eventually satisfied.

5

Plaintiffs' argument fails to recognize that the subcontractors had a right to file a lien against the residence regardless of whether the Crockers knew that the subcontractors remained unpaid. Thus, the Crockers would have to pay the subcontractors to satisfy the liens even if the Crockers knew the subcontractors were unpaid. Also, as noted above, the Court finds that Larry Hutchings' testimony is credible. Thus, the Court concludes that the reason why the subcontractors were unpaid and filed the mechanics liens is, at least in part, due to the Crockers' failure to pay for the extras as required by the Agreement.

In conclusion, the Court finds that the Crockers failed to establish that Debtors made any misrepresentation to them. Additionally, even assuming *arguendo* that Debtors had made a misrepresentation, the Crockers failed to establish that they either relied on that misrepresentation or that the misrepresentation proximately caused their damages. Accordingly,

**IT IS HEREBY ORDERED THAT** judgement is entered in favor of Defendants.

DATED: March 18, 2008
St. Louis, Missouri
mtc

David P. McDonald
United States Bankruptcy Judge

Copy mailed to:

Joseph P. Cunningham, III
Cunningham, Rayfield et al.
PO Box 229
2370 Truman Blvd.
Crystal City, MO 63019

Dennis Crocker
Tina Crocker
214 Green Trail Dr
Farmington, MO 63640-9132

Canice Timothy Rice, Jr.
1221 Locust Street
Suite 800
St. Louis, MO 63103-2380

Larry Wayne Hutchings
Joan Elizabeth Hutchings
520 Braning
Farmington, MO 63640